JUDGE OETKEN

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd. Street, Suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

## 13 CV 2651

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

SONIA MENDEZ and ZAIDA MARQUEZ
*individually and on behalf of others similarly
situated,*

                              *Plaintiffs*

         -against-


INTERNATIONAL FOOD HOUSE INC.
(f/k/a ALBERT'S MOFONGO HOUSE, d/b/a
AROMA DITALIA), ZOILO RAMIREZ and
ALBERTO NUNEZ,

                              *Defendants.*
------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**



        Plaintiffs Sonia Mendez and Zaida Marquez, individually and on behalf of others

similarly situated ("Plaintiffs"), by and through their attorneys, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against Defendants International Food House Inc.,

(f/k/a Albert's Mofongo House, d/b/a Aroma d'Italia) Zoilo Romirez and Alberto Nunez,

(collectively the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.       Plaintiffs are former employees of Defendants International Food house Inc.,

Zoilo Ramirez and Alberto Nunez.

2.       Defendants own, operate, or control a restaurant in the corner of 217 Dyckman

Street New York, NY and 4762 Broadway, New York, NY 10034 formerly known as "Albert's

Mofongo House" and currently known as "Aroma d'Italia".

3.       Upon information and belief, Individual Defendants Zoilo Ramirez and Alberto

Nunez serve or served as owners, managers, principals, or agents of Defendant International

Food House Inc., and through the corporate entity operate or operated the Dominican restaurant

as a joint or unified enterprise.

4.       Plaintiffs were ostensibly employed by Defendants as waitresses, but were also

required to perform various other restaurant duties such as cleaning the premises, cleaning the

coffee and juice machines, preparing deliveries, setting up the tables and chairs, changing the

food in the buffet and preparing salads, putting chairs on top of tables and bringing up and

transporting tobacco smoking pipes (aka "Hookas").

5.       Plaintiffs worked for Defendants in excess of 40 hours per week, without

appropriate compensation for the hours over 40 per week that they worked.  Rather, Defendants

failed to maintain accurate recordkeeping of their hours worked, failed to pay Plaintiff

appropriately for any hours worked over 40, either at the straight rate of pay, or for any

additional overtime premium.

6.       Defendants employed and accounted for Plaintiffs as waitresses, but in actuality

their duties required greater or equal time spent in non-tipped functions.

7.       Regardless, at all times Defendants paid Plaintiffs at the lowered tip-credit rate.

- 2 -

8.    However, under state law Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

9.    In addition, Defendants' managers required Plaintiffs to enter false start and stop times for each of the plaintiffs, in order to avoid paying them overtime under the FLSA and NYLL.

10.    Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other delivery employees' tips and made unlawful deductions from Plaintiffs' and other waitresses' wages.

11.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying them at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as waitresses instead of as  non-tipped employees.

12.    Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of 40 hours per week without providing them the minimum wage and overtime compensation required by federal and state law and regulations.

13.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL").

- 3 -

14.    Plaintiffs seeks certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 29 U.S.C. §§ 201 *et seq*. (FLSA); and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

16.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. The Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district

## THE PARTIES

### *Plaintiffs*

17.    Plaintiff Sonia Mendez ("Plaintiff Mendez" or "Ms. Mendez") is an adult individual residing in Bronx County, New York. Plaintiff Mendez was employed by the Defendants from approximately January 2011 until February 4th 2013.

18.    Plaintiff Zaida Marquez ("Plaintiff Marquez" or "Ms. Marquez") is an adult individual residing in Bronx County, New York. Plaintiff Marquez was employed by the Defendants from approximately April 14th 2010 until on or about November 2012.

19.    They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

-4-

*Defendants*

20.     Defendants own, operate, or control a restaurant located in the corner of 217 Dyckman Street New York, NY and 4762 Broadway, New York, NY 10034 formerly known as "Albert's Mofongo House" and currently known as "Aroma d'Italia".

21.     Upon information and belief, Defendant International Food House Inc. is a corporation organized and existing under the laws of the State of New York. Upon information and belief it maintains its principal place of business at the corner of 217 Dyckman Street New York, NY 10034 and 4762 Broadway, New York, NY 10034.

22.     Defendant Zoilo Ramirez is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Zoilo Ramirez is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Zoilo Ramirez possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

23.     Defendant Alberto Nunez is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Alberto Nunez is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Alberto Nunez possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of

Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

24.     Defendants operate a restaurant in the Washington Heights area of New York.

25.     Defendants maintain as their principal place of business a centralized office which is located at the corner of 217 Dyckman Street New York, NY 10034 and 4762 Broadway, New York, NY 10034., the location of the restaurant.

26.     The Individual Defendants, Zoilo Ramirez and Alberto Nunez, possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

27.     Upon information and belief, Defendants Zoilo Ramirez and Alberto Nunez serve or served as Chairmen and/ or Chief Executive Officers of Defendant Corporation.

28.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees .

29.     Defendants possess or possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

30.     Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

31.     In the alternative, the Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

32.     Upon information and belief, Defendants Zoilo Ramirez and Alberto Nunez (1) operate International Food House Inc. as an alter ego of themselves, and/or (2) fail to operate International Food House Inc. as an entity legally separate and apart from themselves, by among other things, (a) failing to adhere to the corporate formalities necessary to operate International Food House Inc. as a corporation, (b) defectively forming or maintaining the corporate entity of International Food House Inc., by among other things failing to hold annual meetings or maintaining appropriate corporate records, (c) transferring assets and debts freely as between all Defendants, (d) operating International Food House Inc. for their own benefit as the sole or majority shareholders, (e) operating International Food House Inc. for their own benefit and maintaining control over it as a closed corporation, (f) intermingling assets and debts of their own with International Food House inc., (g) diminishing and/or transferring assets to protect their own interests, and (h) other actions evincing a failure to adhere to the corporate form.

33.     At all relevant times, Defendants were the Plaintiffs' employer within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

34.     In each year from 2007 to the present, the Defendants, both separately and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.    In addition, upon information and belief, the Defendants and/or their enterprise were directly engaged in interstate commerce. As example, numerous items that were used in the Dominican restaurant on a daily basis were produced outside of the state of New York.

## *Plaintiffs*

36.    Plaintiffs are former employees of the Defendants, who were primarily employed to work as waitresses, but spent over 2 hours per workday performing a variety of non-tip duties unrelated to their job description.

37.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### *Plaintiff Sonia Mendez*

38.    Plaintiff Mendez was employed by the Defendants from approximately January 2011 until on or about February 4th 2013.

39.    Defendants ostensibly employed Plaintiff Mendez as a waitress.

40.    However, throughout her employment, Plaintiff Mendez spent over two hours of her work day performing non-tipped duties such as cleaning the premises, cleaning the coffee and juice machines, preparing deliveries, setting up the tables and chairs, changing the food in the buffet and preparing salads.

41.    Although Plaintiff Mendez was ostensibly employed as a waitress, she spent over two hours of each day performing non-tip work throughout her employment with Defendants.

42.    Plaintiff Mendez's work duties required neither discretion nor independent judgment.

43.    Plaintiff Mendez regularly handled goods in interstate commerce, such as food, spices and other products produced outside of the State of New York.

44.    Plaintiff Mendez regularly worked in excess of 40 hours per week.

45.    From approximately January 2011 until February 4th 2013. Plaintiff Mendez worked a schedule from approximately 11:00 p.m. until on or about 7:00 a.m. Fridays, Saturdays, Sundays, Mondays, Tuesdays and Thursdays. (Typically 48 hours per week).

46.    Throughout her employment with the Defendants, Plaintiff Mendez was paid her wages in cash.

47.    From approximately January 2011 until February 4th 2013, Plaintiff Mendez was paid $5 per hour.

48.    Plaintiff Mendez's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

49.    Defendants only provided Plaintiff Mendez with break periods on a very irregular basis.

50.    Although Plaintiff Mendez was required to punch in and out, Defendants did not provide her with a statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

51.    Furthermore, Defendants required Plaintiff Mendez to sign a document falsely stating that she received $7.25 per hour in order to receive her salary.

52.    Plaintiff Mendez was never notified by Defendants that her tips were being included as an offset for wages.

53.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mendez's wages.

- 9 -

54.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Mendez regarding overtime and wages as required under the FLSA and NYLL.

55.     Defendants did not provide Plaintiff Mendez with each payment of wages a statement of wages, as required by NYLL 195(3).

56.     Defendants did not give any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

57.     Defendants required Plaintiff Mendez to purchase "tools of the trade" with her own funds—including approximately 14 dress shirts for $40 each.   Thus, the total cost of the "tools of the trade" that Plaintiff Mendez was required to purchase as a waitress was approximately $560.00.

### Plaintiff Zaida Marquez

58.     Plaintiff Marquez was employed by the Defendants from approximately April 14th 2010 until on or about November 2012.

59.     Defendants ostensibly employed Plaintiff Marquez as a waitress.

60.     However, throughout her employment, Plaintiff Marquez spent over two hours of her work day performing non-tipped duties  such as cleaning the premises, sweeping and mopping, transporting the "Hooka" pipe from the basement  to customers and back to the basement and  setting up the tables and chairs.

61.     Although Plaintiff Marquez was ostensibly employed as a waitress, she spent over two hours of each day performing non-tip work throughout her employment with Defendants.

62.     Plaintiff Marquez's work duties required neither discretion nor independent judgment.

63. Plaintiff Marquez regularly handled goods in interstate commerce, such as food, spices and other products produced outside of the State of New York.

64. From approximately April 2010 until on or about November 12, 2013, Plaintiff Marquez worked a schedule from approximately 11:00 p.m. until on or about 6:00 a.m. Thursdays through Tuesdays (Typically 42 hours per week).

65. Prior to March 2011, Plaintiff Marquez was paid her wages in cash. After March 2011, she received a check.

66. From approximately April 2010 until on or about November 12, 2013, Plaintiff Marquez was paid $5 per hour.

67. Plaintiff Marquez's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

68. Defendants only provided Plaintiff Marquez with break periods on a very irregular basis.

69. Although Plaintiff Marquez was required to punch in and out, Defendants required her to falsely punch out every night at 4:30 a.m. and continue working for more than one hour.

70. In addition, Defendants required Plaintiff Marquez to punch out in the middle of her shift for a 15 to 20 minute break that she did not get.

71. Defendants did not provide Plaintiff Marquez with a statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

72. Defendants required Plaintiff Marquez to sign a document falsely stating that she received $7.25 per hour in order to receive her salary.

- 11 -

73.     Furthermore, Defendants repeatedly deducted from Plaintiff Marquez's paycheck to penalize her every time a customer would fail to pay for his or her check; these deductions when added together came up to over $1000 .

74.     Plaintiff Marquez was never notified by Defendants that her tips were being included as an offset for wages.

75.     Moreover, Plaintiff Marques had to share her tips daily with the individual who prepared the smoking pipe ("Hooka") and with the manager.

76.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Marquez's wages.

77.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Marquez regarding overtime and wages as required under the FLSA and NYLL.

78.     Defendants did not provide Plaintiff Marquez with each payment of wages a statement of wages, as required by NYLL 195(3).

79.     Defendants did not give any notice to Plaintiff Marquez, in English and in Spanish (Plaintiff Marquez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

80.     Defendants required Plaintiff Marquez to purchase "tools of the trade" with her own funds—including approximately 20 shirts at $30 each, 5 black dress pants  for $25 each, 6 black and white short pants  for $30 each, 3 corsets for $70 each, 3 aprons for $9 each and  4 Halloween costumes  for $60 each. Thus, the total cost of the "tools of the trade" that Plaintiff Marquez was required to purchase as a waitress was approximately $1300.

*Defendants' General Employment Practices*

81.     Defendants regularly required Plaintiffs to work in excess of 40 hours per week without paying them the proper minimum and overtime wages.

82.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours per week without paying them appropriate minimum wage and/or overtime compensation, as required by federal and state laws.

83.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

84.     Defendants required Plaintiffs to perform several non-tip-related tasks for over two hours of each work day, in addition to their primary role as waitresses.

85.     These responsibilities included everything from  cleaning the premises, cleaning the coffee and juice machines, sweeping and mopping, setting up the tables and chairs, changing the food in the buffet and preparing salads, putting chairs on top of tables and bringing up and transporting tobacco smoking pipes (aka "Hookas").

86.     Plaintiffs were employed ostensibly as waitresses (tipped employees) by Defendants, although their actual duties included much greater time spent in non-tipped functions such as those outlined above.

87.     Plaintiffs were paid at the lowered tip-credited rate by Defendants, however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever were less) (12 N.Y.C.R.R. § 146).

88.     New York State regulations provide that an employee cannot be classified as a tipped employee "on any day... in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

89.     Plaintiffs' duties were not incidental to their occupation as waitresses, but instead constituted entirely unrelated occupations with duties such as those outlined above. While performing these duties, Plaintiffs did not receive tips; therefore, they constituted non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

90.     In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

91.     Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

92.     In fact, Defendants required plaintiffs to punch out of work at false hours and to sign a false statement of the hours they worked and the pay they received.

93.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, and (2) for overtime due,.

- 14 -

94.     Furthermore, Defendants illegally shorted Plaintiffs' paychecks every time a customer would walk-out without paying his/her bill or check.

95.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

96.     Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

97.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

- 15 -

## FLSA COLLECTIVE ACTION CLAIMS

98.     Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

99.     At all relevant times, Plaintiffs, and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of 40 hours per workweek, and willfully failing to keep records required by the FLSA. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

100.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

101.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation.

102.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

103.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r-s).

- 16 -

104.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

105.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

106.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

107.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

108.    Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

109.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

110.    Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

111.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

112.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Labor Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation.

113.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

114.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Labor Law § 663.

115.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK LABOR LAW)

116.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

117.    Defendants, in violation of the NYLL § 190 *et seq*. and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek.

118.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

119.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Labor Law § 663.

120.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

121.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

122.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other

information as required by NYLL §195(1).

123.     Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorneys fees.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

124.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

125.     Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorneys fees.

## SEVENTH CAUSE OF ACTION
### (Violation of the Unauthorized Deduction Provisions of the NYLL)

81.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

82.      Defendants made unauthorized deductions from Plaintiffs' wages in violation of NYLL § 193.

83.      Plaintiffs have   been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Mendez  and Marquez respectfully requests that this Court enter judgment against Defendants:

(a)      Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C.§ 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)      Declaring that Defendants have violated the minimum wage provisions of, and

associated rules and regulations under the FLSA as to Plaintiffs and the FLSA class members;

(c)      Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under the FLSA as to Plaintiffs and the FLSA class members;

(d)      Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs  and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs  and the FLSA class members;

(f)      Awarding Plaintiffs  and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs  and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C.§ 216(b);

(h)      Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs  and the members of the FLSA Class;

(i)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs  and the members of the FLSA Class;

(j)      Declaring that the Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs  ' and the FLSA class members' compensation, hours,

wages; and any deductions or credits taken against wages;

(k)   Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs and the FLSA class members;

(l)   Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(m)   Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(n)   Awarding Plaintiffs and the FLSA class members pre-judgment and post-judgment interest as applicable;

(o)   Declaring that Defendants have violated the tip withholding and the timely payment provisions of Article 6 of the NYLL;

(p)   Declaring that Defendants' violation of the provisions of Article 6 of the NYLL was willful;

(q)   Awarding Plaintiffs and the FLSA class members liquidated damages, interest, costs and attorneys' as provided by Article 6 of the NYLL;

(r)   Awarding Plaintiffs and the FLSA class members the expenses incurred in this action, including costs and attorney's fees; and

(s)   All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 23, 2013

By: _____

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd. St. Suite 2020
New York, New York 10165
Telephone:     (212) 317-1200
Facsimile:      (212) 317-1620

Joshua S. Androphy [JA-1481]